JAMES H. C. LARKINS, ARTHUR RAY LARKINS, and
CHARLES WADE STAPLETON,

*v.*

STATE OF TENNESSEE

376 S. W. 2d 459

(*Knoxville*, September Term, 1963.)

Opinion filed March 5, 1964.

CARR & EDWARDS, Blountville, BURKETT C. MCINTURFF, Kingsport, for plaintiffs in error.

GEORGE F. MCCANLESS, Attorney General, EDGAR P. CALHOUN, Assistant Attorney General, for the State.

MR. SPECIAL JUSTICE ROBERT S. CLEMENT delivered the opinion of the Court.

The Plaintiffs in Error, hereinafter referred to by name or as Defendants, were convicted in the Criminal Court of Sullivan County of burglary and grand larceny and sentenced to three years in the penitentiary. The Defendant Stapleton was also convicted by the same jury, after the foregoing conviction, of being an habitual criminal and was sentenced to life imprisonment.

All three Defendants have perfected appeals to this Court, but only Stapleton has filed assignments of error. His assignments of error are: (1) Alleged error as to the sufficiency of the evidence; (2) Alleged error as to the admissibility of evidence obtained from an alleged

illegal search; (3) Alleged error as to the admissibility of the confessions of the Defendants Larkins; (4) Alleged error as to the refusal of the Trial Judge to make a requested charge; and (5) Alleged error for the failure to hold a preliminary hearing for a period of several days after the arrest.

On the night of November 27, 1962, Salyers Candy Company of Kingsport, Tennessee, was burglarized and a number of items, including watches, flashlights, cigarettes, cash, and other items, were carried away. Police Officers Fletcher and Lane of the Kingsport Police Department, in the investigation of the break-in, on December 8, 1962, obtained a search warrant for the premises of Apartment 96, Cloud Apartments, the home of Defendant James Larkins. They entered the building on said date and proceeded to search the apartment. Present at the time of the search were Arthur Ray Larkins, Janice Larkins, the wife of Defendant James Larkins, a sister of Mrs. Larkins, and Betty Christian. The officers found several cartons of cigarettes, about One Hundred Forty-Five ($145.00) Dollars in money, a screw driver and a chisel. The search warrant, which was made an exhibit during the trial, shows on its face that it was issued December 8, 1962, and returned on that date, but the supporting affidavit recites that the information received by the affiant was received on December 11, 1962, or three days after the search had been made. As this case must turn on the search of December 8, 1962, we think it proper that the entire search warrant be copied herein and which reads as follows:

"AFFIDAVIT

I, Albert Fletcher, make oath that I am an appointed and qualified police officer of the City of Kingsport,

Tennessee; that on the *11th* day of December, 1962, I received information from a responsible and reliable citizen of said State, County and City, whose name I have this day disclosed to the City Judge to whom this application is made, that there was stolen from Salyer Candy Company on or about the 27 day of November, 1962, certain personal property belonging to Bill Sutherland and being of the value of $1300.00, and described as follows: cigarettes, lighters, shotgun shells, 22 cal. shells and U. S. money; and that James Larkins, who resides in or occupies the following premises, to-wit: Being an apartment located in Cloud Apartments said apartment being #96 located in Kingsport, Sullivan County, Tennessee, this date has in his possession in the building hereinbefore described on said premises the aforesaid property hereinbefore described which the said James Larkins is unlawfully keeping in his possession, and his control in violation of the laws made and provided in such cases.

Affant further states that the said informant above mentioned advised him that merchandise was seen being carried into said apartment.

Wherefore, as such officer, acting in performance of my duty in the premises, I pray that the Court issue a warrant authorizing the search of the person of the said James Larkins and the premises hereinabove described for said personal property, and that such search be made either by day or night.

Subscribed and sworn to before me, this *8th* day of December, 1962.

/s/ Albert Fletcher

/s/ H. M. Parsons

City Judge"

524

The back of the warrant shows: "Issued this 8th day of December, 1962, signed, H. M. Parsons, City Judge."

Subsequent to the search, all Defendants were arrested and placed in the City Jail. Janice Larkins, the wife of James Larkins, was also arrested and placed in jail.

On December 12, 1962, Officer Lane swore out another search warrant for the same premises and recovered a long list of articles, including gloves, screw drivers, watches, flashlights, a record player, a portable T.V., a number of cigarette lighters, together with many other articles. At the time of the last search, all of the Defendants were in the County Jail, and there is no insistence that a copy of the search warrant, as provided by law, was left with any of the Defendants at the time of the second search, December 12, 1962. The record shows that a copy was left with someone at the time the first search was made.

Subsequently to the second search, the Defendant James Larkins made a confession, which was concurred in by his brother, Arthur Ray Larkins. State's witness, Sergeant Lane, when questioned about Larkins' confession, said:

"A. I couldn't say his exact words, but we didn't think we had evidence on him until we did find that stuff.

"Q. That was the 12th?

"A. Yes."

All Defendants attacked the search warrant. The Defendants insist that the first search was illegal because it shows on its face that it was issued on December 8, 1962, but the affidavit containing the information states

that the information was received on December 11, 1962. This question was before this Court in *Harvey v. State,* 166 Tenn. 227, 60 S.W.2d 420, where a search warrant appeared to have been issued on December 26, 1932. The affidavit upon which the warrant issued bore the date of December 27, 1932. The return on the warrant bore the date of December 28, 1932. In the Harvey case, the State introduced the Magistrate who issued the warrant and who testified that the affidavit was made and the warrant issued at the same time and that the date, December 27, 1962, on the affidavit was a clerical error.

The Supreme Court, speaking through Chief Justice Green, said:

"We think the testimony of the magistrate was inadmissible. It has been settled in Tennessee since *Bank of Tennessee v. Patterson,* 27 Tenn. 363, (8 Humph.) that the verity of a record cannot be impeached by testimony aliunde. This rule has been applied to proceedings before a magistrate preliminary to the issuance of a search warrant. *Bragg v. State,* 155 Tenn. 20, 290 S.W. 1; *Reed v. State,* 162 Tenn. 643, 39 S.W. (2d) 749. * * * Upon the authorities stated, we must conclude that the search warrant herein was void, that evidence obtained as a result of a search thereunder was inadmissible, and should have been excluded by the trial court. It follows that there was no competent evidence to sustain the judgment below, and the same is reversed."

Defendants further insist that the officers were in custody and control of the premises from the time of the arrest of the Defendants and Janice Larkins, until the second search was made on December 12, and that the

second search was merely a continuation of the search made on December 8th.

Mrs. Janice Larkins remained in jail until December 11, 1962. On the tenth of December, she gave the police officers a written statement in which she admitted overhearing all three Defendants talk about the burglary of the Salyers Candy Company. Upon the trial, she denied the truth of these statements and contended that they were given only so she would not lose her baby. She gave a second statement on December 11th, after which she was released from jail, and at the preliminary hearing on December 17th, she was released from further prosecution.

Four days after his arrest, on December 12, 1962, Defendant James Larkins gave police officers a signed statement in which he admitted his participation in the burglary. He also implicated his brother and Stapleton. This statement was later read in the presence of Defendant Ray Larkins, who admitted that it was true and signed it. Defendant Stapleton, however, strongly denied the truth of James Larkins' statement when he was confronted with it. Stapleton was not present when Larkins made his statement.

The State concedes that confessions of the Larkins brothers can have no probative effect as to the Defendant Stapleton in view of his denial of the confessions when read in the presence of all three Defendants; and without these confessions, there is no competent evidence to connect Stapleton with the crime, and that the conviction of Stapleton on the foregoing charge should be reversed and remanded for a new trial. It necessarily follows that his conviction on the habitual criminal charge must be

reversed as it took this conviction to bring the Defendant within the meaning of the Habitual Criminal Act.

We will now consider the record before us as to the other Defendants.

We think that the case of *Harvey v. State,* supra, is directly in point, and that regardless of the apparent guilt of these Defendants, the search on December 8, 1962, violated their constitutional rights and that any evidence obtained thereby should have been excluded. The State insists that the discrepancy in the date of the affidavit and the date of the warrant was a clerical error and that the search on December 12th was a legal search, at which time a large amount of stolen merchandise was found, and that this evidence together with the subsequent confessions of James Larkins, concurred in by his brother, Ray Larkins, and the testimony of Janice Larkins, was sufficient to convict these Defendants.

It should be borne in mind that since the first search on December 8, 1962, these two Defendants were in jail. Janice Larkins was in jail until December 11th, or until she made her second confession. The record discloses that the officers had the key to the apartment from the 8th of December until the second search was made on the 12th and that after the release of Janice Larkins on December 11th, she was not given the key to the apartment until after the search on the 12th. In other words, the officers were in complete possession and control of the premises to the exclusion of the Defendants and Janice Larkins.

The question we are now called on to determine is, if the arrest and detention of the defendants on December 8th was unlawful, following the illegal search of their

apartment, and, if so, does the issuance of a valid search warrant following an unlawful search and arrest have the effect of legalizing the arrest and justify the introduction of evidence discovered as the result of the second search? In the case of *Murphy v. State,* 194 Tenn. 698, 704, 254 S.W.2d 979, 981, this Court, speaking through then Chief Justice Neil, held that where a highway patrolman stopped defendant to check his driver's license and held him for an hour or more until a search warrant was obtained and then found intoxicating liquor in his automobile, Defendant's arrest and seizure was unlawful, and did not justify the introduction of evidence discovered as the result of the search. In the Murphy case, supra, we find the following: "If a search and seizure is illegal at its inception it cannot become legalized by what it brings to light, rather must it be justified by the steps that precedes the search and seizure, which themselves must be lawful in their entirety. Thus, if disclosed as the result of an illegal search, it is not justified by the discovery of contraband, gambling devices, or unlawfully possessed weapons; nor will a subsequent admission or confession of accused legalize a search illegal at its inception." 56 C.J. Article 70, Page 1184; 79 C.J.S. Searches and Seizures sec. 51.

In *People v. Defore,* 242 N.Y. 13, 150 N.E. 585, 586, Mr. Justice Cardozo used the following apt expression: "Means unlawful in their inception do not become lawful by relation when suspicion ripens into discovery." *Tobin v. State,* 36 Wyo. 368, 255 P. 788; *People v. Jakira,* 118 Misc. 303, 193 N.Y.S. 306; *Jokosh v. State,* 181 Wis. 160, 139 N.W. 976; *State v. Gibbons,* 118 Wash. 171, 203 P. 390.

In 47 Am.Jur., 74, p. 550, "Searches and Seizures," it is said:

"Where property has been seized unlawfully without a warrant or other justification, the subsequent issuance of a search warrant and retention of the property thereunder do not make the previous search and seizure lawful. A search warrant executed or amended to meet the emergencies of a search and seizure then in progress without sufficient authority, is an evasion of the purpose of the constitutional safeguards." 143 A.L.R. 136.

Based upon the foregoing authorities, we must hold that the search on December 12th was a continuation of the search of December 8th and that under the authority of *Harvey v. State*, supra, the evidence obtained thereby was inadmissible and should have been excluded by the Trial Court.

Having concluded that the evidence obtained by search of the premises on December 8th and 12th should have been excluded, the only question now confronting the Court is whether there was sufficient evidence before the Court to convict these two Defendants, the Larkins brothers? The testimony of Janice Larkins was harmful. Let us look at the conditions under which she gave statements on December 10th and 11th, which she repudiated in Court. Here we find a mother being taken from her three-year-old boy and placed in jail. There is evidence in the record of suggestions about what would happen to her baby if she were convicted. Surely, these possibilities weighed heavily on the mind of Janice Larkins. She was kept in jail away from her baby for three days. She made a statement on December 10, but she was not re-

leased to see and be with her baby until she made another statement on December 11th.

One of the leading cases in Tennessee on confessions is found in 33 Tenn. 75, 76, *Deatheridge v. State,* where this Court stated the rule regarding confessions, and which has been followed consistently:

> "If a confession be free and voluntary; if it appear to proceed merely from a sense of guilt and not from the influence of *hope* or fear in any degree, it is competent evidence. Great weight and credit are justly due a confession of this kind; for we are to presume in the absence of influence or motive, a person who is innocent of the crime will not confess himself guilty. But if the confession be the result of hope or fear, induced or excited by a person having power over the prisoner, it becomes incompetent to prove that the prisoner is guilty of the crime."

A mother will go a long way for her child.

Some three thousand years ago one of the wisest judges was called upon to determine who was the real mother of the baby both were claiming. He called for a sword, saying he was going to divide the child, giving one-half to each of the women. Then it was the real mother who relinquished her claim to the child rather than see harm come to her baby (I Kings, Third Chapter).

It may be that Janice Larkins gave true statements on December 10th and 11th. In fact, from the evidence uncovered from the searches, which we have held to be illegal, there seems to be no doubt. But, it follows that she also probably testified truthfully when she said that

the reason she gave those statements was to be with her baby. The same reason might be given with reservations as to James Larkins.

■ Then the record reveals that the Defendants were held nine days before being taken before a committing magistrate, and from all of which, the search, the circumstances under which the confessions were given, the delay in arraignment, this Court has reached the conclusion that these convictions must be reversed and remanded. Strong evidence of guilt will not justify our affirming these convictions where the record reveals that the constitutional rights of the Defendants were violated in obtaining the evidence.

The convictions of all Defendants are reversed and remanded for a new trial.