IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 2, 2004

## STATE OF TENNESSEE v. FRAZIER FASHUN PERRY

**Appeal from the Circuit Court for Dyer County**
**No. CO2-314 Lee Moore, Judge**

———————————

**No. W2004-00651-CCA-R3-CD  - Filed March 18, 2005**

———————————

The appellant, Frazier Fashun Perry, was indicted for: (1) possession of cocaine over .5 grams with
the intent to sell or deliver; (2) possession of marijuana over one-half ounce with the intent to sell
or deliver; and (3) being a drug felon in possession of a handgun.  The appellant filed a motion to
suppress the items seized as a result of the execution of a "no knock" search warrant.  The trial court
denied the motion to suppress and the appellant entered a guilty plea to possession of more than .5
grams of cocaine with the intent to resell, a Class B felony.  As part of the plea agreement, the
appellant reserved a certified question of law to determine whether exigent circumstances existed
to justify execution of the "no knock" search warrant in violation of Tennessee Rules of Criminal
Procedure 41(e).  The appellant filed a timely notice of appeal.  We determine that the trial court did
not err in denying the motion to suppress as the State proved that exigent circumstances existed
which justified the issuance of a "no knock" search warrant.  Therefore, we affirm the judgment of
the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and J. C.
McLIN, JJ., joined.

Clifford K. McGown, Jr., Waverly, Tennessee (on appeal), Jim W. Horner, District Public Defender
and H. Tod Taylor, Assistant Public Defender, Dyersburg, Tennessee (at trial), for the appellant,
Frazier Fashun Perry.

Paul G. Summers, Attorney General & Reporter; Seth P. Kestner, Assistant Attorney General; Phillip
Bivens, District Attorney General; and Karen Burns, Assistant District Attorney General, for the
appellee, State of Tennessee.

# OPINION

## Factual Background

On March 25, 2002, Officer Jim Joyner of the Dyersburg Police Department completed an affidavit for a search warrant of the residence of the appellant upon belief that the appellant had cocaine, marijuana and drug paraphernalia inside. The search warrant was based on information from a reliable confidential informant that the appellant was "in possession of a quantity of cocaine and marijuana at his residence." According to the affidavit, the confidential informant also notified Officer Joyner that the appellant had a surveillance camera outside his residence and could easily dispose of the drugs inside when he saw law enforcement officers approach his residence. As a result of the information from the confidential informant, Officer Joyner requested a "no knock" warrant. The search warrant was issued and the police executed the warrant later that same day. As a result, the police confiscated $1,430 in cash, two (2) bags containing several rocks of suspected crack cocaine, a .32 caliber pistol, twenty (20) rounds of ammunition, two (2) small bags of marijuana, one (1) large bag of marijuana, one (1) television, one (1) surveillance camera, two (2) rent receipts, and one (1) pay stub. The appellant was arrested and later indicted by the Dyer County Grand Jury in a multi-count indictment for possession of cocaine over .5 grams with the intent to sell or deliver, possession of over one-half an ounce of marijuana with the intent to sell or deliver and possession of a handgun after having been convicted of a felony drug offense.

The appellant subsequently filed a motion to suppress the evidence seized from the execution of the search warrant. At the hearing on the motion to suppress, Officer Joyner testified about the basis for the search warrant. He testified that the confidential informant told him about the surveillance camera at the appellant's residence. He also stated that he had personally seen a surveillance camera on the appellant's house and that, based on his experience, this type of surveillance system would allow the appellant to see law enforcement officers coming up to his house in enough time to dispose of evidence.

Officer Joyner also stated that the surveillance system had a motion detector alarm and that any motion outside would cause the system in the house to beep, thus allowing the appellant to know that someone was moving up to his house even if he was not watching the surveillance screen. Officer Joyner testified that when the search warrant was executed, the monitor to the surveillance system was on and that the appellant had the ability to see "from the front of the house all the way to the street."

According to Officer Joyner, when the warrant was executed, the appellant's front door was unlocked, the main door was partially open and the screen door was closed. Officer Joyner testified that the officers identified themselves and announced that they had a search warrant as soon as they

entered the home and that there was no damage done to the home as a result of executing the search warrant. The appellant was located inside the residence in a bedroom with the surveillance equipment. The drugs were found in a box in the closet in that same room.

Officer Chris Hamm of the Dyersburg Police Department stated that there were approximately five (5) officers present when the warrant was executed and that two (2) of the officers were in street clothes while three (3) or four (4) of the officers were in their police uniforms. Officer Hamm noticed the camera outside the house when the officers were preparing to execute the warrant. He testified that the "no knock" warrant was based on the existence of the surveillance camera and the ease in which the appellant could have destroyed the evidence.

Officer Mark Reynolds also testified at the suppression hearing and corroborated the testimony of the other officers. In his opinion, the "no knock" warrant was issued based on the presence of the surveillance camera, the appellant's resulting ability to identify the officers as they approached the residence and the ease in which the appellant could dispose of the drugs.

At the conclusion of the hearing, the trial court denied the motion to suppress and determined that there were:

> [R]easonable suspicions of exigent circumstances that would warrant a no knock in this situation and that is the information that was given by the informant, that had proven to be a reliable informant, that the material was there, but also that the surveillance equipment was available. This surveillance equipment was certainly seen and noted by the officers as they approached the house. It's - - you have surveillance equipment inside businesses. And you have equipment, you know, motion detectors inside houses. But first I've ever heard of one on the outside of the house. I think the reasonable suspicion - - There is reasonable suspicion based under the circumstances that warrants the no knock entry.

After the trial court denied the motion to suppress, the appellant pled guilty to possession of cocaine over .5 grams with the intent to sell in violation of Tennessee Code Annotated section 39-17-417. The appellant agreed to an eight-year sentence and dismissal of the two (2) remaining charges as well as the reservation of the following certified question of law: "Whether exigent circumstances existed in this cause to justify execution of a "no-knock" search warrant in violation of T. R. C. P. 41(e)?"

The appellant filed a timely notice of appeal.

## Motion to Suppress

As framed by the certified question of law, the sole issue on appeal is propriety of the "no knock" search. The appellant argues that there is no exception to the "knock and announce" rule

present herein that would justify the execution of a "no knock" warrant. The State counters that the motion to suppress was properly denied by the trial court.

At the outset, we note that "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). As is customary, "the prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" State v. Carter, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting State v. Keith, 978 S.W.2d 861, 864 (Tenn. 1998)). "The application of the law to the facts found by the trial court, however, is a question of law which this Court reviews de novo." State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

We further observe that an affidavit establishing probable cause is an indispensable prerequisite to the issuance of a search warrant. See, e.g., Tenn. Code. Ann. § 40-6-103; Tenn. R. Crim. P. 41(c); State v. Henning, 975 S.W.2d 290, 294 (Tenn. 1998); State v. Moon, 841 S.W.2d 336, 338 (Tenn. Crim. App. 1992). Such probable cause "must appear in the affidavit [itself] and judicial review of the existence of probable cause will not include looking to other evidence provided to or known by the issuing magistrate or possessed by the affiant." Moon, 841 S.W.2d at 338; see also Henning, 975 S.W.2d at 295. To sufficiently make a showing of probable cause, an affidavit "must set forth facts from which a reasonable conclusion might be drawn that the evidence is in the place to be searched." State v. Smith, 868 S.W.2d 561, 572 (Tenn. 1993). However, a decision regarding the existence of probable cause requires that the affidavit contain "more than mere conclusory allegations by the affiant." State v. Stevens, 989 S.W.2d 290, 293 (Tenn. 1999); see also Moon, 841 S.W.2d at 338.

Furthermore, when "probable cause for a search is based upon information from a confidential informant, there must be a showing in the affidavit of both (1) the informant's basis of knowledge and (2) his or her veracity." State v. Powell, 53 S.W.3d 258, 262 (Tenn. Crim. App. 2000); see also State v. Jacumin, 778 S.W.2d 430, 432, 435- 36 (Tenn. 1989) (utilizing the standard set out in Spinelli v. United States, 393 U.S. 410 (1969) and Aguilar v. Texas, 378 U.S. 108 (1964)).[1] To sufficiently make such showings, the affidavit must include facts permitting "the magistrate to determine: (1) whether the informant had a basis for his information that a certain person had been, was, or would be involved in criminal conduct or that evidence of crime would be found at a certain place" and (2) whether the informant is inherently credible or "the reliability of his information on the particular occasion." Moon, 841 S.W.2d at 338. Again, the courts have stressed that conclusory statements absent supportive detail will not suffice to establish these

---

[1] In Illinois v. Gates, 462 U.S. 213 (1983), the United States Supreme Court abandoned the Aguilar-Spinelli two-pronged test for evaluating the sufficiency of an affidavit involving a confidential informant. Gates, 462 U.S. at 238. However, the Tennessee Supreme Court subsequently concluded that Aguilar-Spinelli "properly applied 'provide[s] a more appropriate structure for probable cause inquiries incident to the issuance of a search warrant . . . [and] is more in keeping with the specific requirement of Article 1, Section 7 of the Tennessee Constitution that a search warrant not issue 'without evidence of the fact committed.'" Jacumin, 778 S.W.2d at 436.

requirements.  See, e.g., Id. at 339.  However, "independent police corroboration" may compensate for such deficiencies.  See Jacumin, 778 S.W.2d at 436; Moon, 841 S.W.2d at 340.

In the case herein, the appellant does not challenge the validity of the affidavit used to procure the search warrant, but rather the manner of execution of the warrant as a "no knock" warrant.  Rule 41(e) of the Tennessee Rules of Criminal Procedure provides:

> (e) Authority to Break In.  If after notice of authority and purpose a peace officer is not granted admittance, or in the absence of anyone with authority to grant admittance, a peace officer with a search warrant may break open any door or window of a building or vehicle, or any part thereof, described to be searched in the warrant to the extent that it is reasonably necessary to execute the warrant and does not unnecessarily damage the property.

Tenn. R. Crim. P. 41(e).  Thus, a law enforcement officer who is charged with the execution of a search warrant must give: (1) notice of his authority; and (2) the purpose of his presence at the structure to be searched.  State v. Lee, 836 S.W.2d 126 (Tenn. Crim. App. 1991); State v. Fletcher, 789 S.W.2d 565 (Tenn. Crim. App. 1990).  The "knock and announce" rule serves three purposes.  First, the rule provides a form of protection from violence and assures the safety and security of both the occupants of the dwelling and the officers executing the search warrant.  Lee, 836 S.W.2d at 128.  Second, the rule protects the privacy of the occupant living in the dwelling.  Id.  Third, the rule prevents needless destruction of property.  Id.

The State correctly recognizes in its brief that the United States Supreme Court has concluded that the common law "knock and announce" procedure is a factor to consider in assessing the reasonableness of a search or seizure under the Fourth Amendment.  Wilson v. Arkansas, 514 U.S. 927, 933-34 (1995).  The "knock and announce" requirement is not without exception, when exigent circumstances exist.  In Richards v. Wisconsin, 520 U.S. 385 (1997), the Supreme Court held:

> In order to justify a "no-knock" entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence.

Id. at 394.

The failure to comply with the provisions of Tennessee Rule of Criminal Procedure 41(e), absent exigent circumstances, "results in the exclusion of any evidence seized under color of the [search] warrant."  State v. Curtis, 964 S.W.2d 604, 609 (Tenn. Crim. App. 1997).  There are, however, exceptions to the rule requiring a reasonable waiting period:

Compliance is not required if knocking and announcing would increase the officer's peril, or if an officer executing a warrant perceives indications of flight or indications that evidence is being destroyed . . . . These are contingencies excusing compliance.

Henning, 975 S.W.2d at 299-300 (citations omitted). The State has the burden of establishing facts and circumstances which constitute exigent circumstances. The State must establish "more than a mere hunch or suspicion before an exigency can excuse the necessity for knocking and announcing their presence." Curtis, 964 S.W.2d at 610 (quoting Bates, 84 F.3d at 795). Exigent circumstances cannot be found by a court if the circumstances are predicated upon general fears of the officers executing the search warrant. Id. Further, officers may not create exigent circumstances as a subterfuge for entering a residence without complying with the "knock and announce" rule. Id.

As a general rule, it is sufficient for the state to show that (a) a person within the dwelling knows of the officer's authority and purpose; (b) the officers have a justified belief someone within the dwelling is in immediate peril of bodily harm; (c) the officers have a justified belief those inside the dwelling are aware of their presence and are engaged in escape or the destruction of evidence; (d) a person inside the dwelling is armed and is either likely to use the weapon or become violent; or (e) a person inside the dwelling has threatened an officer's safety, possesses a criminal record reflecting violent tendencies, or has a verified reputation of a violent nature.

Id.

In Henning, our supreme court upheld a search when the defendant, who had just completed a drug transaction, saw an officer approaching and fled towards his residence, falling into the doorway just as the officer made contact. 975 S.W.2d at 300. The officer, who had a search warrant for the residence of the defendant, was excused under those circumstances from formally complying with the knock and announce rule. Id.

In the case at issue, the evidence provided at the hearing on the motion to suppress established that Officer Joyner received information from a confidential informant that the appellant had drugs inside his house and that the appellant's residence was equipped with a surveillance system and that any evidence could be destroyed quickly due to the appellant's ability to monitor the activity outside the residence.

In our assessment, the State met its burden of proving exigent circumstances.[2] As we have stated previously, a "no knock" warrant is appropriate when "the officers have a justified belief those inside the dwelling are aware of their presence and are engaged in escape or the destruction of evidence." Curtis, 964 S.W.2d at 610. The appellant had a surveillance camera as well as motion

---

[2]We feel compelled to note that the supreme court's recent opinion in State v. Carter, No. W2002-00947-SC-R11-CD, ___ S.W.3d ___ (Tenn. Mar. 18, 2005) does not apply to the case herein because the police officers were in possession of a search warrant at the time of their entry into the appellant's residence.

detecting equipment so that he could monitor people approaching his residence even if he was not looking at the surveillance monitor. We feel that there is a definite relationship between the existence of surveillance equipment and the justification for a "no knock" warrant. As a result of the equipment he had at his residence, the appellant had the ability to not only protect his drugs from other people but to monitor any people approaching his residence so that he could take precautions, including destroying the drugs, prior to their arrival. For these reasons, the officers had a reasonable fear that the longer they took to execute the warrant by following the traditional "knock and announce" rule, the more opportunity the appellant had to dispose of the evidence. Exigent circumstances existed which justified the issuance of the "no knock" warrant. Therefore, the search of the residence and the seizure of the cocaine, marijuana, and handgun were constitutionally reasonable pursuant to the Tennessee Constitution and the Fourth Amendment to the United States Constitution. The trial court properly denied the motion to suppress. Accordingly, we affirm the judgment of the trial court denying the motion to suppress.

Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE