# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### July 26, 2011 Session

## STATE OF TENNESSEE v. JAVIS MONTELL DEAN

**Direct Appeal from the Circuit Court for Blount County**
**No. C-16946    David R. Duggan, Judge**

---

**No. E2010-02429-CCA-R3-CD - Filed December 21, 2011**

---

The Defendant, Javis Montell Dean, pled guilty to possession of a schedule II controlled substance with intent to sell, a Class B felony, and introduction of contraband into a penal facility, a Class C felony. The trial court sentenced him to an effective sentence of eight years and ordered that the Defendant serve one year incarcerated and serve the remainder in the community corrections program. As part of the Defendant's pleas, he reserved a certified question of law challenging the trial court's denial of his motion to suppress. After reviewing the record, the parties' briefs, and applicable law, we conclude that the trial court did not err when it denied the Defendant's motion to suppress. Accordingly, we affirm the Defendant's convictions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which and CAMILLE R. MCMULLEN, J., joined. J.C. MCLIN, J., not participating.[1]

Robert L. Vogel (on appeal), Karmen Waters (at trial), Knoxville, Tennessee, and Charles Carpenter (at trial), Maryville, Tennessee, for the appellant, Javis Montell Dean.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Michael L. Flynn, District Attorney General; and Matthew Dunn and Kathy Aslinger, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

---

[1]The Honorable J.C. McLin died September 3, 2011, and did not participate in this opinion. We acknowledge his faithful service to this Court.

## I. Facts and Background

The Blount County Grand Jury indicted the Defendant on December 3, 2007, for possession of more than twenty-six grams of cocaine with the intent to sell or deliver, a Class B felony, and introduction of contraband into a penal facility, a Class C felony. The Defendant filed motions to suppress the evidence on August 28, 2007, and July 2, 2009.

The trial court held a hearing on the motions to suppress on August 13, 2009. At the hearing, the parties stipulated that the search warrant was defective due to a clerical error. The parties then presented the following evidence at the suppression hearing: Chad Simpson with the Maryville Police Department Drug Task Force identified the Defendant and testified that he encountered the Defendant on August 3, 2007, while investigating Da'mon Watson. Police had been investigating Watson "[o]ff and on for several years." The task force arranged for a confidential informant, whom police had used in previous controlled purchases, to call Watson about selling and delivering to the informant more than four ounces of crack cocaine. The confidential informant had informed the task force that Watson sold crack cocaine in and around the Hall community, and, while the informant knew Watson, he had never personally purchased cocaine from him. The task force verified that the information that the confidential informant provided them was correct and reliable.

Officer Simpson testified he obtained a search warrant, which a judge signed on August 3, 2007. He intended to execute the search warrant on August 3, and, in preparation of executing the warrant, he placed surveillance on Watson's residence. In an effort to ensure that Watson was present at the time of the search, the officers had the confidential informant arrange for the drug transaction to occur at the residence.

Officer Simpson was present when the informant called Watson, and he said that police recorded the phone call. When Officer Simpson went to get the warrant, Special Agent Rich Calcagno of the Federal Bureau of Investigation (FBI) remained with the confidential informant, who was making additional phone calls to Watson. Watson said that he would meet the informant at the residence and sell him the desired amount of crack cocaine. Officers Matt McKinnis and Jason Ewing surveilled the residence while Officer Simpson went to get the warrant.

While Officer Simpson was getting the warrant, Watson arrived at his residence with the Defendant. Watson and the Defendant eventually exited the residence and got into a vehicle, with the Defendant driving. When Officer Simpson returned, the Defendant and Watson were still on the premises but had begun to back out of the driveway. Officers took the Defendant and Watson into custody and executed the search warrant. They brought

Watson inside the residence, while the Defendant remained outside. They searched the Defendant and brought him to the jail. When the police officers searched Watson's residence, they found 92.6 grams of crack cocaine.

On cross-examination, Officer Simpson testified that the search warrant identified an address for officers to search and Andrea Watson or Da'mon Watson as the persons to search. The police officers went to the residence with the intent to observe a controlled purchase involving Watson.

To Officer Simpson's knowledge, the Defendant was not a property holder, nor did he have a property interest in the residence. The confidential informant's information was specific to Watson and did not include any information about the Defendant or his involvement in the purchase. Officer Simpson intended to arrest Watson in the controlled purchase. Officer Smith said that, at some point, Watson reentered the residence while the Defendant remained in the vehicle.

Officer Simpson said that police officers believed that the Defendant was involved in the sale or receipt of drugs, so they took him into custody for investigation. Deputy Terry Orr transported the Defendant to the jail. Before transporting him, Deputy Orr did a "pat-down" search of the Defendant that did not produce anything noteworthy.

Chad Bailey with the Blount County Sheriff's Office Correction Division, testified that he encountered the Defendant on August 3, 2007, when police brought him in under investigation and requested a search. Officer Bailey had asked the Defendant whether he had anything illegal on him, and the Defendant initially told him that he did not. The police officers repeatedly asked him if he had anything illegal on him while in the pat-down room and again while he was in the shower-out area. The Defendant ultimately changed his mind and handed the officers a small amount of what appeared to be crack cocaine that he had retrieved from the opening near his anus. The officers again asked him if he had anything else on his person, and the Defendant said that he did not. However, the officers found and retrieved another bag of what appeared to be crack cocaine that was sticking out of the Defendant's anus.

In denying the Defendant's motion to suppress, the trial court found that the Defendant was not a transient visitor to Watson's residence and that, even if he were, his detention was justified because it was based on more than his mere presence at the place police officers were to search. The trial court further found that law enforcement properly made a warrantless search of the Defendant because they had probable cause to believe that he committed a felony.

Following the trial court's denial of the motion to suppress, the Defendant pled guilty but reserved two certified questions for our review pursuant to Tennessee Rule of Criminal Procedure 37.

## II. Analysis

### A. Reservation of Certified Question

The State contends that the Defendant failed to properly reserve either of the two certified questions of law that are the subject of this appeal. According to the State, "[t]he judgments and the referenced document containing the purported certified questions do not reflect that the questions were expressly reserved with the consent of the State or the trial court, they do not reflect that the [D]efendant, the State, and the trial court are of the opinion that the certified question is dispositive of this case." The State further argues that the second certified question does not clearly identify the scope and limits of the issue reserved.

Tennessee Rule of Criminal Procedure 37(b)(2)(A) allows for an appeal from any order or judgment on a plea of guilty or nolo contendere if the defendant reserves the right to appeal a certified question of law that is dispositive of the case, so long as the following four requirements are met:

> (I) the judgment of conviction or other document to which such judgment refers that is filed before the notice of appeal, contains a statement of the certified question of law that the defendant reserved for appellate review;
> (ii) the question of law is stated in the judgment or document so as to identify clearly the scope and limits of the legal issue reserved;
> (iii) the judgment or document reflects that the certified question was expressly reserved with the consent of the state and the trial court; and
> (iv) the judgment or document reflects that the defendant, the state, and the trial court are of the opinion that the certified question is dispositive of the case[.]

Tenn. R. Crim. P. 37(b)(2)(A).

The Tennessee Supreme Court clearly outlined the requirements for reserving a certified question of law in *State v. Preston*:

> Regardless of what has appeared in prior petitions, orders, colloquy in open court or otherwise, the final order or judgment from which the time begins to run to pursue a T.R.A.P. 3 appeal must contain a statement of the dispositive certified question of law reserved by defendant for appellate review and the

question of law must be stated so as to clearly identify the scope and the limits of the legal issue reserved. For example, where questions of law involve the validity of searches and the admissibility of statements and confessions, etc., the reasons relied upon by defendant in the trial court at the suppression hearing must be identified in the statement of the certified question of law and review by the appellate courts will be limited to those passed upon by the trial judge and stated in the certified question, absent a constitutional requirement otherwise. Without an explicit statement of the certified question, neither the defendant, the State nor the trial judge can make a meaningful determination of whether the issue sought to be reviewed is dispositive of the case. Most of the reported and unreported cases seeking the limited appellate review pursuant to Tenn. R. Crim. P. 37 have been dismissed because the certified question was not dispositive. Also, the order must state that the certified question was expressly reserved as part of a plea agreement, that the State and the trial judge consented to the reservation and that the State and the trial judge are of the opinion that the question is dispositive of the case. Of course, the burden is on defendant to see that these prerequisites are in the final order and that the record brought to the appellate courts contains all of the proceedings below that bear upon whether the certified question of law is dispositive and the merits of the question certified. No issue beyond the scope of the certified question will be considered.

*State v. Preston*, 759 S.W.2d 647, 650 (Tenn. 1988). As the Tennessee Supreme Court stressed, "*Preston* puts the burden of reserving, articulating, and identifying the issue upon the defendant." *State v. Pendergrass* 937 S.W.2d 834, 838 (Tenn. 1996).

The judgment form for the possession of a schedule II controlled substance with intent to sell conviction reflects that the Defendant expressly reserved, with the consent of the State and the trial court, the right to appeal a certified question of law pursuant to Rule 37(b)(2)(A). It also provides that the State and the trial court are of the opinion that the certified question is dispositive of the case. The Defendant attached the certified questions to the judgment. The judgment for the introduction of contraband into a penal facility conviction incorporates by reference the certified questions that the Defendant submitted on the judgment form for the other conviction and attached to the judgments.

The [D]efendant submitted the following as certified questions for our review:
(1) Whether the trial court erred in denying the [D]efendant's motion to suppress where:
(a) the trial court held "the agents properly made a warrantless arrest of the [D]efendant, when they took him into custody for investigative questioning because the agents had probable cause to believe he committed a felony."

(b) [t]he agents came to 826 Morse Street and came into contact with the [D]efendant based on a warrant dated July 10, 2006
(c) [t]he search warrant authorized a search of Andrea Watson, Da['m]on Watson, the residence at 826 Morse Street and any vehicles present at the time of the search under the control of Andrea and/or Da['m]on Watson.
(d) the court determined that the [D]efendant was not a transient visitor on 8-3-07 to Da'[m]on Watson's residence at 826 Morse Street.

(2) Whether the [D]efendant's 5th and 6th amendment rights were violated before, during, and after he was taken into custody.

Rule 37, as applicable to this case, permits us to review a certified question of law in instances where the "other document to which [a] judgment refers that is filed before the notice of appeal" otherwise satisfies the requirements of the rule. *See State v. Irwin*, 962 S.W.2d 477, 479 (Tenn. 1998) (acknowledging that a separate document that comports with Rule 37 requirements will afford this court jurisdiction if the document is incorporated into the judgment). The judgments of convictions in this case incorporate by reference the exhibit filed contemporaneously with the judgments, the judgments reflect that the Defendant expressly reserved the certified question with the consent of the State and the trial court, and the judgments reflect that the Defendant, the State, and the trial court are of the opinion that the certified question is dispositive of the case.

Regarding the requirement that the question of law is stated in the judgment or document so as to identify clearly the scope and limits of the legal issue reserved, the Defendant stated the first certified question so as to identify clearly the scope and limits of the legal issue reserved. The second question, however, does not clearly identify the scope and limits of the issue reserved. The second question, "[w]hether the [D]efendant's 5th and 6th amendment rights were violated before, during, and after he was taken into custody" is overly broad. This overly broad question violates the requirements announced by the Supreme Court in *Preston*. The question is not only general, but it also does not clearly identify the reasons upon which the Defendant relied at the suppression hearing. The Defendant has failed to properly identify the scope and limits of the issue reserved in his second certified questions of law. Accordingly, we will address the Defendant's first certified question, but we conclude he did not properly preserve the second question, regarding the violation of the Defendant's Fifth and Sixth Amendment rights, for appeal.

**B. Motion to Suppress**

The Defendant contends that the trial court erred when it denied his motion to suppress because he was a "transient visitor" at the property and because the police officers did not have probable cause to make a warrantless arrest of his person. The State responds that the police officers' warrantless search of the Defendant was lawful because a prudent person would believe that police officers had probable cause to believe that the Defendant had committed a felony and that the Defendant was not a transient visitor.

We review this certified question under the same standard as an appeal from a judgment denying a motion to suppress, although this case comes to us on appeal as a certified question of law under Tenn. R. Crim. P. 37(b)(2). *See State v. Nicholson*, 188 S.W.3d 649, 656 (Tenn. 2006). "[A] trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). Furthermore, although "[t]he party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence," the burden remains on the state to prove that a warrantless search was constitutionally permissible. *Id*.; *see also Nicholson*, 188 S.W.3d at 656-57; *State v. Henning*, 975 S.W.2d 290, 298 (Tenn. 1998). We review questions of law *de novo*. *State v. Day*, 263 S.W.3d 891, 900 (Tenn. 2008).

In its written order denying the Defendant's motion to suppress, the trial court made the following specific findings of fact regarding the Defendant's motion to suppress. Considering our standard of review, we quote those findings from the trial court's order, herein.

> 1. On August, 3, 2007, agents of the Fifth Judicial District Task Force obtained a search warrant to search the residence of Andrea Watson at 826 Morse Street, Alcoa, Tennessee 37701, which sought to search said premises and the persons of Andrea Watson and/or Da'mon Watson for cocaine, crack cocaine, drug paraphernalia, monies from illegal drug sales, papers, documents, electronic documents, and evidence of dominion and control.

> 2. The Defendant, Javis Montell Dean, was not the subject of the search warrant.

> 3. The search warrant was obtained based upon Task Force agents having established probable cause for the issuance of the warrant based upon information obtained through a confidential informant including the placement of recorded telephone conversations through the confidential information with

Da'mon Watson pertaining to the sale and purchase of drugs by the confidential informant from Watson.

4. Agents also engaged in surveillance of that residence and arranged, through the confidential informant, for the informant to purchase drugs from Watson, with the informant having arranged to meet Watson at 826 Morse street on August 3, 2007 to purchase drugs. Agents were present when the arrangement was made. Watson agreed to meet the confidential informant at 826 Morse Street to sell cocaine to the informant.

5. Watson arrived at the residence as arranged. Agents were observing the residence when Watson arrived.

6. When Watson arrived at 826 Morse Street, he arrived as the passenger in a car being driven by Defendant, Javis Montell Dean.

7. Other agents who were obtaining the search warrant, and then proceeded to the address to serve the warrant, were in communication with agents on the scene while the events were unfolding.

8. Upon their arrival at the address, both Watson and Defendant went inside the residence, then came back outside and got back into Defendant's vehicle. Watson then went back inside the residence for a brief moment before agents arrived on the scene with the search warrant and then proceeded to execute the warrant. Agents secured both Watson and Defendant, and patted them down, before searching the premises where 92.63 grams of crack cocaine were located.

9. Defendant was taken into custody for investigative questioning, and was transported to the Blount County jail. Upon arrival at the jail Defendant was searched, and crack cocaine was found on his person. The crack cocaine was found on Defendant after correction officers with the Blount County Sheriff['s] Office asked Defendant if he had any illegal substances in his possession. Defendant initially stated that he did not have any such substances on his person, but then he subsequently handed over a small amount of crack cocaine which he removed from his anus. Corrections officers then asked him again if he had any additional illegal substances, and Defendant said that he did not have any other substances in his possession. Corrections officers then searched him and found that another bag was protruding from Defendant's

anus, the bag was removed, and it contained crack cocaine. In total, Defendant was secreting 32 grams of crack cocaine in his anus.

10. It is conceded that the search warrant which was issued, and then executed, for the search of the premises at 826 Morse Street, as well as for the persons of Andr[e]a Watson and Da'mon Watson, is defective.

11. Defendant filed a motion to suppress which focuses upon a search allegedly being conducted with an illegal search warrant, and the motion sets forth numerous grounds upon which the warrant is defective. It is not in dispute, however, that the warrant was not issued for the search of Defendant, Javis Montell Dean, or his residence.

The trial court then made several conclusions of law, articulated more in depth below, including that the Defendant was not a transient visitor to the property and that the police officers properly made a warrantless arrest of the Defendant.

## 1. Transient Visitor

The Defendant contends he was a transient visitor at the property, noting that he arrived while the property was under surveillance. *See State v. Curtis*, 964 S.W.2d 604, 612 (Tenn. Crim. App. 1997). The State counters that the legal definition of "transient visitor" requires that one arrive at a premises while a search is in progress. Therefore, the State contends, the Defendant did not meet the definition of transient visitor. With respect to this issue, the trial court found:

Defendant was not a person who simply arrived at the premises being searched who does not reside inside the dwelling or have a property interest in the dwelling, and who was not named in the search warrant as a party to be searched under color of the search warrant. *See State v. Steel*, 2007 Tenn. Crim. App. LEXIS 779 (2007); *also see State v. Curtis*, 964 S.W.2d 604 (Tenn. Crim. App. 1997). Rather, Defendant is the person who drove Watson, who was the subject of the search warrant onto the premises in Defendant's car, and for the purpose of an arranged drug sale and purchase. Even if, however, Defendant was a transient visitor, the Court finds that Defendant's "detention was justified, as it was based on more than his mere presence at the place to be searched." *Steel* at *28.

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures, and "article 1, section 7 [of the Tennessee Constitution] is identical in intent and purpose with the Fourth Amendment." *State v. Downey*, 945 S.W.2d 102, 106 (Tenn. 1997) (quoting *Sneed v. State*, 221 Tenn. 6, 423 S.W.2d 857, 860 (1968)). Under these provisions, a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result of such a search or seizure should be suppressed unless the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement. *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997).

In *Curtis*, this Court stated that officers executing a search warrant may not detain and search a transient visitor to the searched premises merely because of the visitor's presence on the premises. 964 S.W.2d at 612. The Court defined a "transient visitor" as:

> a person who (a) arrives at the premises being searched while the search is in progress, (b) does not reside inside the dwelling or have a property interest in the dwelling, and © is not named in the search warrant as a party to be searched under color of the search warrant.

*Id.* In this case, the trial court found that the Defendant was not a transient visitor. The record shows that the task force police officers arranged to purchase drugs from Watson through a confidential informant. The police officers and informant arranged for the purchase location to be a house known to be used by Watson. After the drug buy was arranged, police officers surveilled the premises while other police officers sought and obtained a search warrant. While the premises were under surveillance, but before the warrant was executed, Watson returned to the house close in time to the prearranged time at which the drug buy was to occur. The Defendant drove Watson to the premises and entered the premises, where they remained for a short time. He and Watson then exited the house together, and got back into the Defendant's vehicle. Watson then went back into the house, and the officers arrived to conduct the search warrant while the Defendant was still seated in his vehicle. This evidence supports the trial court's finding that the Defendant did not arrive at the premises while the search was in progress. He did not, therefore, meet the definition of "transient visitor," and he is not entitled to relief on this issue.

## 2. Warrantless Search

The Defendant next contends that his search did not meet the requirements necessary to be justified as a search incident to a lawful arrest. He asserts that the custodial arrest was not supported by probable cause. The State counters that police officers had probable cause to arrest the Defendant and that their search was incident to a lawful arrest.

When deciding this issue, the trial court found:

> Agents properly made a warrantless arrest of Defendant, when they took him into custody for investigative questioning, because the agents had probable cause to believe that Defendant had committed a felony. Tenn. Code Ann. § 40-7-103 (a)(2 and 3). This is not a case where officers failed to possess any information which linked Defendant with Watson, who was the subject of the search warrant. Rather, agents had arranged, through a confidential informant, for the informant to purchase cocaine from Watson at 826 Morse Street, at a specific date and time. Agents were surveilling the premises when Watson arrived at the designated, arranged time. When Watson arrived on the scene, he was a passenger in a car being driven by Defendant. Based upon those facts and circumstances within the agents' knowledge, those facts and circumstances were sufficient to warrant a prudent person in believing that Defendant had committed an offense, and accordingly they had probable cause to take Defendant into custody and transport him to the jail for investigative questioning, and subsequently to search Defendant at the jail.

Our analysis begins with the fundamental principle under our state and federal constitutions that a warrantless search is presumed invalid and any evidence discovered as a result is subject to suppression. *State v. Day*, 263 S.W.3d 891, 901 (Tenn. 2008); *State v. Berrios*, 235 S.W.3d 99, 104 (Tenn. 2007). The Fourth Amendment to the Constitution of the United States, applicable to the states as recognized in *Mapp v. Ohio*, 367 U.S. 643, 655 (1961), provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Similarly, Article I, section 7 of the Tennessee Constitution provides:

> [T]he people shall be secure in their persons, houses, papers, and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offenses are not particularly described and supported by evidence, are dangerous to liberty and ought not to be granted.

There are, however, recognized exceptions to the warrant rule, and the warrantless search of the Defendant's person may be valid if the search falls within one of the exceptions. Recognized exceptions to the rule include a search incident to a lawful arrest. *Day*, 263 S.W.3d at 901 n.9. Our Supreme Court recently reminded us that this, and the other exceptions to the rule, must remain "well-delineated," "jealously and carefully drawn," and "narrowly" defined. *State v. Ingram*, 331 S.W.3d 746, 755 (Tenn. 2011) (citations omitted).

Courts have designated three categories of police-citizen interaction: (1) a full-scale arrest, which must be supported by probable cause, *see Brown v. Illinois*, 422 U.S. 590, 598 (1975); *State v. Ferrante*, 269 S.W.3d 908, 913 (Tenn. 2008); (2) a brief investigatory detention, which must be supported by reasonable suspicion of criminal activity, *see Terry v. Ohio*, 392 U.S. 1, 27 (1968); *State v. Williams*, 185 S.W.3d 311, 315 (Tenn. 2006); and (3) a brief police-citizen encounter that requires no objective justification, *see Florida v. Bostick*, 501 U.S. 429, 434 (1991); *State v. Daniel*, 12 S.W.3d 420, 424 (Tenn. 2000). The Defendant's case involves a full-scale arrest, and, thus, we must determine whether officers had probable cause to arrest the Defendant.

An arrest is "the taking, seizing, or detaining of the person of another, either by touching or putting hands on him, or by any act which indicates an intention to take him into custody." *West v. State*, 425 S.W.2d 602, 605 (Tenn. 1968). A law enforcement officer may, incident to a lawful arrest, search the person arrested and the immediate surrounding area. *See Chimel v. California*, 395 U.S. 752, 762-63 (1969); *State v. Crutcher*, 989 S.W.2d 295, 300 (Tenn. 1999). A search incident to a lawful arrest is justified by the need to protect the arresting officer and others from harm and the need to prevent the concealment or destruction of evidence. *See Knowles v. Iowa*, 525 U.S. 113, 116 (1998); *Crutcher*, 989 S.W.2d at 300.

In *State v. Richards*, our Supreme Court explained:

In order to justify a warrantless search as incident to a lawful arrest, four conditions must be met: (1) the arresting officer must have probable cause to believe that the defendant had engaged or was engaging in illegal activity . . .; (2) the probable cause must attach to an offense for which a full custodial arrest is permitted—i.e., there must be statutory grounds for a warrantless arrest . . .; (3) the arrest must be consummated either prior to or contemporaneously with the search . . .; (4) the search must be incident to, not the cause of, the arrest.

286 S.W.3d 873, 878 (Tenn. 2009) (internal citations omitted).

As to the first requirement, "[w]hether probable cause is present depends upon whether the facts and circumstances and reliable information known to the police officer at the time of the arrest 'were sufficient to warrant a prudent man in believing that the [individual] had committed an offense.'" *State v. Downey*, 945 S.W.2d 102, 106 (Tenn. 1997) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). In the case under submission, police officers arranged a drug purchase with a known drug dealer, Watson, through a confidential informant. The drug purchase was to take place at Watson's residence at an agreed time. While police were conducting surveillance on the residence shortly before the agreed meeting time, Watson arrived at the residence in a car driven by the Defendant. The Defendant and Watson entered the residence and then left the residence together, both getting back into the car together. Watson then went back into the house briefly, before additional police officers arrived and executed the search warrant. We agree with the trial court that this information was sufficient to warrant a prudent person believing that the Defendant had participated in transport of drugs for the drug sale.

As to the second requirement, Tennessee Code Annotated section 40-7-103(a)(3) provides that a police officer may arrest a person without a warrant "[w]hen a felony has in fact been committed, and the officer has reasonable cause for believing the person arrested has committed the felony." Because possessing cocaine or participating in the sale of cocaine in any manner is a felony, the police officers' probable cause attached to an offense for which there existed grounds for a warrantless arrest. Finally, our review reflects that the evidence does not preponderate against the trial court's finding that the police officers arrested the Defendant prior to the search and that the search was incident to the Defendant's arrest.

We conclude the trial court did not err in finding the police officers' search of the Defendant was permissible under the search incident to a lawful arrest exception to the warrant requirement. The trial court, therefore, properly denied the Defendant's motion to suppress.

### III. Conclusion

Based on the above mentioned reasoning and authorities, we affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE

-13-